# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>Approximately 118.56885425 Bitcoin in an FBI cryptocurrency wallet,<br><br>Approximately 15.7 Bitcoin in a cryptocurrency wallet,<br><br>Approximately 147 Bitcoin Cash in a cryptocurrency wallet,<br><br>Approximately 147 Bitcoin Gold in a cryptocurrency wallet,<br><br>Approximately 147 Bitcoin Satoshi Vision in a cryptocurrency wallet,<br><br>All funds located in USAA Federal Savings Bank checking account number x4425,<br><br>All funds located in USAA Federal Savings Bank savings account number x1567, and<br><br>All funds located in Kraken account number xOHFQ,<br><br>    Defendants. | Case No. |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, the United States of America, by its attorneys, Jeffrey P. Ray, Acting United States Attorney for the Western District of Missouri, and Stephanie C. Bradshaw, Assistant United States Attorney, brings this verified complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is civil action *in rem* to forfeit property to the United States pursuant to 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(A), and 18 U.S.C. § 981(a)(1)(C).

## THE DEFENDANTS *IN REM*

2. The defendants *in rem* consist of the following properties, collectively referred to herein as the "Defendant Properties":

   (a) Approximately 118.56885425 Bitcoin held in an FBI cryptocurrency wallet;

   (b) Approximately 15.7 Bitcoin in a cryptocurrency wallet;

   (c) Approximately 147 Bitcoin Cash in a cryptocurrency wallet;

   (d) Approximately 147 Bitcoin Gold in a cryptocurrency wallet;

   (e) Approximately 147 Bitcoin Satoshi Vision in a cryptocurrency wallet;

   (f) All funds located in USAA Federal Savings Bank checking account number x4425;

   (g) All funds located in USAA Federal Savings Bank savings account number x1567; and

   (h) All funds located in Kraken account number xOHFQ.

3. The defendant property described in paragraph 2(a) is presently in the custody of the Federal Bureau of Investigation ("FBI"), within the Western District of Missouri.

4. The defendant properties described in paragraphs 2(b) through 2(h) have not been seized but are, upon information and belief, located within the Western District of Missouri.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

6. This Court has *in rem* jurisdiction over the Defendant Properties pursuant to 28 U.S.C. § 1355(b)(1)(B), incorporating 28 U.S.C. § 1395, because the Defendant Properties are found in this district.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1395, because the Defendant Properties are found in this district.

## BASIS FOR FORFEITURE

8. The Defendant Properties are subject to forfeiture, pursuant to 21 U.S.C. § 881(a)(6), because they constitute money, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; proceeds traceable to such an exchange; and/or money, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act.

9. The Defendant Properties are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), because they constitute or were derived from proceeds traceable to offenses constituting a "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), that is, distribution of and conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

10. The Defendant Properties are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), because they constitute property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957, or are traceable to such property.

## FACTUAL ALLEGATIONS

### Bitcoin and Bitcoin Fog

11. Bitcoin is a type of virtual currency, circulated over the Internet. Bitcoin is not put in circulation by any government, bank, or company, but rather are controlled through computer software operating via a decentralized, peer-to-peer network. Each unit of currency on the "Bitcoin" system (referred to with a capital B) is called a "bitcoin" (referred to with a lowercase b). Bitcoin are sent to and received from Bitcoin "addresses."

12. A Bitcoin address is analogous to a bank account number and is represented as a 26-to-35-character-long case-sensitive string of letters and numbers. Each Bitcoin address is controlled using a unique corresponding private key. This key is the functional equivalent of a password, or PIN, and is necessary to access the funds associated with a Bitcoin address. Only the holder of an address' private key can authorize transfers of bitcoin from that address to other Bitcoin addresses.

13. Individuals can send and receive cryptocurrencies through peer-to-peer digital transactions or by using a third-party broker. To transfer bitcoin to another Bitcoin address, the sender transmits a transaction announcement, which is electronically signed with the sender's private key, across the peer-to-peer Bitcoin network. To complete a transaction, a sender needs only the Bitcoin address of the receiving party and the sender's own private key.

14. All Bitcoin transactions are recorded on what is known as the blockchain. The blockchain is essentially a distributed public ledger that keeps track of all Bitcoin transactions, incoming and outgoing. The blockchain records every address that has ever received a bitcoin and maintains records of every transaction for each Bitcoin address.

15. The Bitcoin blockchain "forked" several times in the past. A "fork" occurs when a change in the blockchain's protocol or rule splits the blockchain, producing a second blockchain that shares all of its history with the original, but resulting in two separate chains. A "hard fork" introduces changes which are not compatible, resulting in a new cryptocurrency. This is how forked currencies such as Bitcoin Cash, Bitcoin Gold, and Bitcoin Satoshi Vision were created.

16. The storage of bitcoin is typically associated with individual "wallets," similar to a virtual account. Wallets can be housed in a variety of forms, including on a tangible, external device ("hardware wallet"); downloaded as software ("software wallets") on a personal computer or server ("desktop wallet") or an application on a smartphone ("mobile wallet"); as printed public and private keys ("paper wallet"); and as an online account associated with a cryptocurrency exchange.

17. While the identity of a Bitcoin address owner is generally anonymous, law enforcement can often identify the owner of a particular Bitcoin address by analyzing the blockchain. The analysis can also reveal additional addresses controlled by the same individual or entity.

18. Bitcoin Fog was an Internet-based service accessible through the Tor network. The Tor computer network was designed to facilitate anonymous communication over the Internet by routing a user's communications through a globally distributed network of relay computers, or proxies, rendering conventional Internet Protocol ("IP") address-based methods of identifying users ineffective. Accordingly, neither law enforcement nor hidden-service users can use public lookups or ordinary investigative means to determine the true IP address—and therefore the location—of a computer server that hosts a hidden service. For these reasons, hidden services are often referenced as residing on the "darknet" or "Dark Web."

19. Bitcoin Fog functioned as a Bitcoin "tumbler" or "mixer" service that allowed users to send bitcoin to designated recipients in a manner designed to conceal the source of the bitcoin. It worked by disassociating incoming bitcoin from particular Bitcoin addresses or transactions, and then comingling that bitcoin with other incoming bitcoin prior to conducting any further transactions.

20. This process allowed Bitcoin Fog customers engaged in unlawful activities to launder their proceeds by concealing the nature, source, and location of their "dirty" bitcoin. Bitcoin Fog publicly advertised this service as a way to help users obscure the source of their bitcoin. Bitcoin Fog earned revenue by charging customers a variable fee of approximately 1% to 3% per transaction.

21. Bitcoin Fog was launched on or about October 27, 2011, and remained operational until it was shut down by U.S. law enforcement in or around April 2021. The website was one of the original Bitcoin tumbling sites on the darknet. Between 2011 and 2021, more than 1.2 million bitcoin (valued at approximately $335,809,383 at the time of the transactions) was sent through the site.

22. The largest senders of bitcoin through Bitcoin Fog were darknet markets, such as Agora, Silk Road, and Silk Road 2.0, which primarily trafficked in illegal narcotics and other illegal goods.

23. Bitcoin Fog was publicly advertised on Internet forums and well-known web pages promoting darknet markets as a tool for anonymizing bitcoin transactions.

6

## Nexus of Defendant Properties to Crimes

24. The Defendant Properties are traceable to the below described activities of a now-deceased individual identified herein as T.R.

25. Prior to his death, T.R. grew cannabis at his property near Philo, California.

26. T.R. sold this cannabis illegally on the Silk Road 2.0 and Agora darknet marketplaces.

27. T.R. is not known to have engaged in any activity on these marketplaces that resulted in payment other than selling illegal cannabis.

28. In all instances, customers paid T.R. bitcoin in exchange for the cannabis.

29. Financial and blockchain analysis shows that, upon receipt of bitcoin payments, T.R. transferred the bitcoin drug proceeds to and among various digital cryptocurrency wallets within his control.

30. In some instances, T.R. transferred bitcoin earned from the darknet marketplaces directly to his cryptocurrency wallets. In other instances, T.R. funneled bitcoin earned from those marketplaces through Bitcoin Fog before it was ultimately deposited in his wallets, allowing him to conceal the nature and source of the bitcoin. T.R. also moved the bitcoin across various wallets, again to conceal the nature and source of the bitcoin.

31. Prior to his death, the above-described bitcoin proceeds of T.R.'s darknet drug sales came to be stored in a cold storage wallet located on a laptop belonging to him.

32. Following his death, T.R.'s family took possession of his assets, including the laptop, in the Western District of Missouri.

33. In or about 2019, a digital wallet was located on the laptop, which contained several hundred bitcoin and forked currencies.

34. The bitcoin and forked currencies were subsequently withdrawn from the wallet and moved into other wallets, with some of the bitcoin cashed out and deposited in bank accounts, as described herein.

35. Financial and blockchain analysis confirms that the entirety of the bitcoin, bitcoin forked currencies, and bitcoin proceeds at issue is traceable to T.R.'s sales of illegal cannabis on darknet marketplaces.

### A. USAA Accounts x4425 and x1567

36. Between October 2019 and December 2019, a portion of the bitcoin located on T.R.'s laptop was cashed out and deposited into USAA Federal Savings Bank checking account number x4425 ("USAA account x4425").

37. Bank records show that a portion of the funds in USAA account x4425 were used to fund USAA Federal Savings Bank savings account number x1567 ("USAA account x1567").

38. Both USAA account x4425 and USAA account x1567 were funded entirely from proceeds of bitcoin located on T.R.'s laptop.

39. The contents of USAA account x4425 and USAA account x1567 are proceeds derived from the distribution of controlled substances, and/or traceable to proceeds from the distribution of controlled substances.

40. The contents of USAA account x4425 and USAA account x1567 are proceeds involved in money laundering activity.

### B. Kraken Account xOHFQ

41. A portion of the bitcoin located on T.R.'s laptop was transferred to Kraken account number xOHFQ. Kraken is a cryptocurrency exchange.

42. The contents of Kraken account xOHFQ are proceeds derived from the distribution of controlled substances, and/or traceable to proceeds from the distribution of controlled substances.

43. The contents of Kraken account xOHFQ are proceeds involved in money laundering activity.

C. **Approximately 118.56885425 Bitcoin**

44. In or about February 2024, members of T.R.'s family agreed to transfer approximately 118.56885425 bitcoin to law enforcement.

45. The approximately 118.56885425 bitcoin was a portion of the bitcoin that had been located on T.R.'s laptop.

46. The approximately 118.56885425 bitcoin was transferred by consent to a secure FBI wallet for safekeeping, where it currently remains.

47. The approximately 118.56885425 bitcoin are proceeds derived from the distribution of controlled substances, and/or traceable to proceeds from the distribution of controlled substances.

48. The approximately 118.56885425 bitcoin are proceeds involved in money laundering activity.

D. **Approximately 15.7 Bitcoin**

49. Upon information and belief, and based on blockchain analysis, approximately 15.7 bitcoin traceable to T.R.'s sales of illegal cannabis on darknet marketplaces is located in a digital wallet within the possession and control of T.R.'s family member in the Western District of Missouri.

50. The approximately 15.7 bitcoin are proceeds derived from the distribution of controlled substances, and/or traceable to proceeds from the distribution of controlled substances.

51. The approximately 15.7 bitcoin are proceeds involved in money laundering activity.

**E. Approximately 147 Bitcoin Cash, 147 Bitcoin Gold, and 147 Bitcoin Satoshi Vision**

52. Upon information and belief, and based on blockchain analysis, unspent forked currency derived from T.R.'s sales of illegal cannabis on darknet marketplaces is located in a digital wallet within the possession and control of T.R.'s family member in the Western District of Missouri.

53. The unspent forked currency includes approximately 147 Bitcoin Cash, approximately 147 Bitcoin Gold, and approximately 147 Bitcoin Satoshi Vision.

54. The approximately 147 Bitcoin Cash, approximately 147 Bitcoin Gold, and approximately 147 Bitcoin Satoshi Vision are proceeds derived from the distribution of controlled substances, and/or traceable to proceeds from the distribution of controlled substances.

55. The approximately 147 Bitcoin Cash, approximately 147 Bitcoin Gold, and approximately 147 Bitcoin Satoshi Vision are proceeds involved in money laundering activity.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

56. The United States repeats and incorporates by reference the foregoing paragraphs.

57. By the foregoing and other acts, the Defendant Properties constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 801, *et seq.*, and are therefore forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

**SECOND CLAIM FOR RELIEF**

58. The United States repeats and incorporates by reference the foregoing paragraphs.

59. By the foregoing and other acts, the Defendant Properties constitute proceeds traceable to an exchange of moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 801, *et seq*., and are therefore forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

**THIRD CLAIM FOR RELIEF**

60. The United States repeats and incorporates by reference the foregoing paragraphs.

61. By the foregoing and other acts, the Defendant Properties constitute moneys, negotiable instruments, securities, or other things of value used or intended to be used to facilitate any violation of 21 U.S.C. §§ 801, *et seq*., and are therefore forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

**FOURTH CLAIM FOR RELIEF**

62. The United States repeats and incorporates by reference the foregoing paragraphs.

63. By the foregoing and other acts, the Defendant Properties constitute, or were derived from, proceeds traceable to specified unlawful activity, that is, distribution of and conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

**FIFTH CLAIM FOR RELIEF**

64. The United States repeats and incorporates by reference the foregoing paragraphs.

65. By the foregoing and other acts, the Defendant Properties constitute property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 or 1957, or

are traceable to such property, and are therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE the United States prays that the Defendant Properties be forfeited to the United States, that the United States be awarded its costs and expenses in this action, and for such other and further relief as the Court deems just and proper.

>
> Respectfully submitted,
>
> Jeffrey P. Ray
> Acting United States Attorney
>
> By: */s/ Stephanie C. Bradshaw*
> Stephanie C. Bradshaw
> Assistant United States Attorney
> 400 E. 9th Street, Fifth Floor
> Kansas City, Missouri 64106
> Telephone: (816) 426-3122
> E-mail: Stephanie.Bradshaw@usdoj.gov

# VERIFICATION

I, Special Agent Michael Hart, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation, that I have read the foregoing Verified Complaint *in Rem* and know the contents thereof, and that the factual matters contained in paragraphs 11 through 55 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 05/14/2025

*[signature]*

Michael Hart
Special Agent
Federal Bureau of Investigation